IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN MARTIN, et al.           :    CIVIL ACTION
                               :
        v.                     :
                               :
                               :
CITIZENS FINANCIAL GROUP, INC., et al.  :    No. 10-260


Goldberg, J.                                          March 27, 2013

## MEMORANDUM OPINION

Plaintiffs, Kevin Martin, John R. DePaolantonio, Jr., Patricia A. Gahan, James Holliday and Mary E. Ryan, on behalf of themselves and all others similarly situated ("Plaintiffs"), have brought this collective action against their employers, Defendants Citizens Financial Group, Inc., RBS Citizens, N.A. (d/b/a Citizens Bank) and Citizens Bank of Pennsylvania (d/b/a Citizens Bank) ("Defendants"). The issue currently before the Court is whether the proposed collective action members in this Fair Labor Standards Act ("FLSA") case are similarly situated so as to justify granting final certification.

For the reasons that follow, Defendants' Motion to Decertify the Collective Action will be granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiffs' amended complaint alleges that Defendants failed to pay overtime wages to their employees for work performed in excess of forty hours per week, in violation of the FLSA, 29 U.S.C. § 201, et seq. (Am. Compl. ¶¶ 73-75.) Plaintiffs brought this lawsuit as a collective

---

[1] The following facts are undisputed unless otherwise noted.

1

action pursuant to 29 U.S.C. § 216(b) of the FLSA, and allege that Defendants engaged in the following practices:

- "Prohibiting their employees from recording all time worked in excess of forty hours per workweek";

- "Erasing or modifying their employees' recorded time in order to eliminate or reduce overtime hours";

- "Providing 'comp time' to their employees in subsequent workweeks in lieu of paying overtime compensation"; and

- "Requiring their employees to perform work during unpaid breaks." (Id. at ¶ 74.)

Plaintiffs are comprised of non-exempt employees[2] working in branches that span nine Eastern states.[3] (Id. at ¶ 73.) These branches have varying characteristics: some are stand-alone branches while others are outposts in supermarkets. (Ekwurtzel Dep., Doc. No. 152-7, pp. 18-19.) The branches are typically run by a branch manager, and often an assistant branch manager. Branches are grouped into slightly larger "regions," with each region being run by a district manager. (Defs.' Br., pp. 4-5.) Plaintiffs' employment positions within the branches also vary and include bank tellers, customer service representatives, advanced tellers, senior tellers, head tellers or lead tellers, personal bankers and bankers. (Am. Compl. ¶ 73.)

Defendants have an official, written policy that requires all non-exempt employees to record all of their time worked, and that they be paid overtime for any time worked in excess of forty hours within a single week. (Citizens' Overtime Policy, Doc. No. 152-1, p. 5.) Plaintiffs allege however, that Defendants engaged in an unwritten policy of denying overtime, whereby,

---

[2] The FLSA lists a number of employee categories that are exempt from its minimum wage and overtime provisions. See 29 U.S.C. § 213. All employees in this action are "non-exempt," and thus entitled to overtime for all time spent working in excess of forty hours per week under the FLSA. See 29 U.S.C. § 207.

[3] These states include: Pennsylvania, New Jersey, Delaware, Connecticut, Massachusetts, New Hampshire, New York, Rhode Island and Vermont. (Am. Compl. ¶ 73.)

at the start of each year, Defendants' headquarters would determine the budgeted "full-time equivalent" ("FTE") of employees that should work at each branch.[4] (See Camilleri Dep., Doc. No. 163-5, pp. 31-44.) Plaintiffs allege that branch managers were directed to stay within the budgeted FTE when scheduling employees, and because the FTE did not include overtime, managers were pressured into not paying overtime. (Pls.' Resp., pp. 4-5.)

Plaintiffs present declarations from 435 opt-in Plaintiffs, which indicate the following:

– 100% of the opt-ins allege they were denied overtime pay;

– 90.65% of the opt-ins claim that management pressured or instructed them to not report all overtime hours;

– 86.54% of the opt-ins indicate that they "were offered 'comp time' in a future week instead of being paid overtime";

– 70.43% of the opt-ins assert that management adjusted their time entries to remove reported overtime;

– 83.64% of the opt-ins claim that management pressured them to go back to their timesheets and remove reported overtime; and

– 89.79% of the opt-ins allege that they were required to perform work during uncompensated breaks.

(See Summary of Decl. Resps., Doc. No. 163-10.) A number of the Plaintiffs that were deposed indicated that their branch managers and/or regional managers were responsible for denying them overtime. (See e.g. Martin Dep., Doc. No. 152-9, pp. 59-62.)

## II. LEGAL STANDARDS

Under the FLSA, plaintiffs may bring a "collective action" on behalf of "themselves and other employees similarly situated" who affirmatively consent to join the litigation. 29 U.S.C.

---

[4] Each FTE permitted at a branch represents forty hours per work week. Therefore, if a branch was allocated 6.4 Target FTEs, the branch would be allocated 256 hours, or 6.4 multiplied by 40, as their FTE budget for the week. (See Camilleri Dep., Doc. No. 163-5, p. 26.)

3

§ 216(b). To proceed in this manner, plaintiffs must show that proposed class members are "similarly situated." Charbrier v. Wilmington Finance, Inc., 2008 WL 938872, at *2 (E.D. Pa. Apr. 4, 2008). This analysis occurs in two stages. First, plaintiffs must obtain "conditional certification" of their proposed class by making a preliminary showing that the named plaintiffs are "similarly situated" to potential class members, under a "modest factual showing" standard. Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 192-93 (3d Cir. 2011) (holding that to satisfy this requirement, plaintiffs must make a "modest factual showing" by "produc[ing] some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees.") If the plaintiffs satisfy this standard, the court conditionally certifies the case for the purposes of notifying potential class members of the litigation and allowing them to affirmatively "opt-in."[5] Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D.N.J. 2000).

The second stage of this process is generally prompted by a motion for decertification by the defendant at the close of discovery, wherein the court makes a final certification determination. This decision requires the court to engage in "a specific factual analysis of each employee's claim to ensure that each proposed plaintiff is an appropriate member of the collective action." Lugo v. Farmer's Pride Inc., 737 F. Supp. 2d 291, 299 (E.D. Pa. 2010). On a motion for decertification, "the burden is on the plaintiffs to establish that they satisfy the similarly situated requirement" by a preponderance of the evidence. Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 537 (3d Cir. 2012). "If the conditional group of plaintiffs does not meet this

---

[5] The parties stipulated that conditional certification was appropriate, and we approved a notice form that was provided to potential class members. At the close of the notice period, approximately 1,000 individuals had opted-in to the case. Following voluntary dismissals and the court's grant of motions to dismiss, there are currently 843 Plaintiffs.

4

standard at the second stage, the group is then decertified, the opt-in plaintiffs are dismissed without prejudice and any remaining plaintiffs are permitted to move onto [sic] the trial stage of litigation." Lugo, 737 F. Supp. 2d at 299.

Although plaintiffs face a higher burden at the decertification stage, "similarly situated does not mean 'identically' situated." Andrako v. United States Steel Corp., 788 F. Supp. 2d 372, 378 (W.D. Pa. 2011). In evaluating whether the proposed collective plaintiffs are similarly situated, relevant factors include:

> whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment. Plaintiffs may also be found dissimilar based on the existence of individualized defenses.

Zavala, 691 F.3d at 536-37. "This list is not exhaustive, and many [other] relevant factors have been identified[,]" including the extent to which members of the proposed class will rely upon common evidence and fairness and procedural considerations. Id.; see also 45C Am. Jur. 2d Job Discrimination.

In evaluating whether plaintiffs are similarly situated, courts often first consider the factual and employment settings of the plaintiffs. Andrako, 788 F. Supp. 2d at 378. To weigh in favor of collective treatment, similarities must "extend beyond the 'mere facts of job duties and pay provisions[,]'" and be viewed in light of the claims asserted. Zavala v. Wal Mart Stores, Inc., 2010 WL 2652510, at *3 (D.N.J. June 25, 2010) (citation omitted). Indeed, "[b]eing similarly situated does not mean simply sharing a common status, . . . [r]ather, it means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 538 (3d Cir. 2012). General allegations of an overarching employer policy "are insufficient, and plaintiffs are

5

required to produce substantial evidence of a single decision, policy, or plan." Andrako, 788 F. Supp. 2d at 378 (citations omitted). Where an employer maintains a formal policy of lawful compensation, plaintiffs must present "substantial evidence that [the employer], in fact, shirked its FLSA responsibilities." Camesi v. University of Pittsburgh Med. Cent., 2011 WL 6372873, at *4 (W.D. Pa., Dec. 20, 2011) (quoting White v. Baptist Mem. Health Care Corp., 2011 WL 1883959, at *10 (W.D. Tenn., May 17, 2011)).

The second factor often considered is whether the "potential defenses" at issue relate to the class as a whole or will be raised with respect to each individual plaintiff. Lugo, 737 F. Supp. 2d at 300-01 (quoting Moss, 201 F.R.D. at 409-10). "Because individualized defenses prevent an efficient proceeding with a representative class, several courts have granted motions for decertification on this basis." Id. Under this factor, it is within the court's discretion to determine whether the presence of individual defenses will make the case unmanageable as a collective action. Id.

Lastly, the court may consider whether "fairness and procedural considerations" weigh in favor of proceeding with a collective action. In undertaking this analysis, the court should consider the primary objectives of FLSA collective actions, which are "(1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." Andrako, 788 F. Supp. 2d at 378 (quoting Lusardi v. Xerox Corp., 118 F.R.D. 351, 359 (D.N.J. 1987)). By the same token, however, the court must determine whether it can "coherently manage the class in a manner that will not prejudice any party." Id. In evaluating these procedural factors, the court should consider whether case management methods such as

bifurcation of the trial, the creation of subclasses or the use of representative testimony would assist in effectively managing the case. Id. at 384.

## III. DISCUSSION

After careful examination of the record and the respective positions of the parties, we conclude that Plaintiffs have not met their burden of demonstrating, by a preponderance of the evidence, that they are similarly situated.

### A. Factual and Employment Settings of the Individual

Regarding the circumstances of Plaintiffs' employment, Defendants first point out that Plaintiffs work at hundreds of branches, which are spread out over nine states, and that five different job classifications are covered by the class. Each branch is also headed by a branch manager, and usually an assistant branch manager. Anywhere from three to twenty branches make up a region, which is headed by its own regional manager. Defendants assert that these differences are particularly significant in light of the fact that specific branch or regional managers were allegedly responsible for the decision to deny overtime.

Defendants further argue that Plaintiffs are unable to provide evidence of an overarching, common employer policy that would permit a collective action. Defendants reference their written policy of paying employees overtime in accordance with the law, and to declarations from thirty Plaintiffs which reflect that overtime was paid correctly ninety-five percent of the time or more. (See Defs.' Br., note 7.)

In further illustrating Plaintiffs' disparate employment settings, Defendants point to variations in the deposition testimonies of numerous Plaintiffs. For example, named Plaintiff John DePaolantonio testified that he was denied overtime from April 17, 2009 through July 31, 2009, whereas opt-in Plaintiff Diane C. Benoit testified that she was denied overtime nearly a

year earlier, from April 2008 through November 2008. (DePaolantonio Dep., Doc. No. 152-6, pp. 65-66; Benoit Dep., Doc. No. 152-2, pp. 33-34.) Defendants note that numerous Plaintiffs testified that they were denied overtime at one branch, but not another, or under one manager but not another, or while working in one position but not another. (See, e.g., Benoit Dep., pp. 22-23; Brannon Dep., Doc. No. 152-4, pp. 38-39; Martin Dep., pp. 59-60.) Based on this testimony, Defendants argue that specific employees being denied overtime in specific branches by specific managers would affect all Plaintiffs differently, and is not evidence of an overarching policy.

In support of its decertification motion, Defendants also rely upon the distinction established by Andrako v. U.S. Steel Corp., 788 F. Supp. 2d 372, 379 (W.D. Pa. 2011) and Lugo v. Farmer's Pride, Inc., 737 F. Supp. 2d 291 (E.D. Pa. 2010). Both of these cases dealt with the defendant employers' alleged failure to pay overtime for hours worked donning and doffing protective gear.

In Andrako, the defendant had a "longstanding agreement, applicable to all represented employees working in regulated areas, that any time spent outside an employee's eight-hour shift walking to and from the locker rooms after donning and prior to doffing protective gear is not compensated." Andrako, 788 F. Supp. 2d at 379 (emphasis in original). Based on this policy, the court held that the overarching policy, affecting all employees in the same way, was sufficient to support the plaintiffs' assertion that final certification was appropriate. Id. at 381.

Alternatively, in Lugo, the plaintiffs were not subject to a specific uniform policy, but instead argued that the defendant's compensation system that complied with the law on its face was a "sham" in that it did not provide adequate compensation. Lugo, 737 F. Supp. 2d at 302. The court found that any "undercompensation was not suffered on a collective basis—i.e.,

8

according to a 'single decision, policy, or plan' applicable to all plaintiffs—but rather that defendant's policies and practices impacted individual plaintiffs in individual ways." Id. at 303.

Defendants argue that this case is more like Lugo, because Plaintiffs are unable to point to a unified policy or plan that affects all Plaintiffs in the same manner. Defendants reference deposition testimony where some Plaintiffs admit that they can only speak to their own experiences and not the Plaintiffs as a whole. (See, e.g., Brannon Dep., pp. 39-40.)

In response, Plaintiffs generally assert that they were subject to the same practice or policy: Citizens' failure to pay overtime for off-the-clock work. Plaintiffs posit that the similarities outweigh their differences, and stress that a collective action requires the Plaintiffs to be "similarly situated," not "identically situated." Andrako, 788 F. Supp. 2d at 378.

Specifically, Plaintiffs point to the following evidence: (1) evidence of "Citizens' uniform timekeeping, staffing and payroll practices"; (2) the "sworn declaration testimony from 466 separate Plaintiffs" which establishes five different practices that served to deny Plaintiffs' overtime;[6] (3) deposition testimony reflecting that the Plaintiffs were denied overtime by their respective branch and regional managers; (4) interrogatory responses from thirteen Plaintiffs who all asserted that they were denied overtime by having to work off-the-clock; (5) timekeeping and payroll data of the putative class members analyzed by Liesl M. Fox, Ph.D., which establishes that eighty-six percent of Plaintiffs had a time entry adjusted on one or more occasions by someone other than themselves, and that "7,576.25 reported work hours were removed due to these adjustments"; and (6) declarations from 106 members of management

---

[6] Between seventy and ninety percent of the declarations reported the following practices by Defendants: (1) pressuring or instructing employees not to record overtime hours; (2) offering "comp time" in a future week instead of being paid for her overtime; (3) adjusting timesheet entries to remove overtime; (4) pressuring employees to adjust their own timesheets to remove overtime; and (5) performing work during uncompensated break time. (See Pls.' Resp., p. 5; Summary of Decl. Resps.)

9

indicating that they were discouraged from allowing overtime, and were aware of the practices complained of by Plaintiffs. (Pls.' Resp., pp. 1, 4-8.)

After carefully considering the evidence of record, we agree with Defendants and conclude that Plaintiffs are unable to demonstrate by a preponderance of the evidence that they are similarly situated. While the evidence relied upon by Plaintiffs tends to establish that the putative class members may have experienced a denial of overtime, such evidence does not change the fact that Plaintiffs work in a variety of positions at one of over a thousand branches across nine states. Moreover, Plaintiffs are unable to point to "substantial evidence of a single decision, policy, or plan" that affects all Plaintiffs in the same way. See Andrako, 788 F. Supp. 2d at 378. To the contrary, Plaintiffs report that decisions to deny overtime were made independently, by either separate branch or regional managers, and were in direct conflict with Defendants' written policy of complying with all state and federal rules for overtime compensation.

Similar to Lugo, Defendants have a written policy that complies with the law. Although Plaintiffs argue that the policy is a sham, they are unable to provide evidence "that supervisors were simultaneously trained, advised, or encouraged not to follow the written policy." Lugo, 737 F. Supp. 2d at 302 (quoting Pacheco v. Boar's Head Provisions Co., 671 F. Supp. 2d 957 (W.D. Mich. 2009) (emphasis in original)). Even if Plaintiffs' allegations are accepted as true, Defendants' policies do not appear to be a "single decision, policy, or plan," but rather policies and practices that "impacted individual plaintiffs in individual ways." Id. at 303. Indeed, Plaintiffs point to five different methods that were allegedly used by Defendants in an effort to deny overtime, but the number of Plaintiffs who claim to have been subject to each illegal practice differs. For example, 89.79% of the opt-ins allege that they were required to perform

10

work during uncompensated breaks, but only 70.43% of the opt-ins assert that management adjusted their time entries to remove reported overtime. Thus, the evidence before us is not like Andrako, where all plaintiffs complained about one "longstanding agreement, applicable to all represented employees." 788 F. Supp. 2d at 379.

Therefore, due to the unresolved differences in the factual and employment setting of the various Plaintiffs, we find that Plaintiffs have not met their burden of demonstrating that they are similarly situated.

B. **Individualized Defenses**

In addition to the disparities in Plaintiffs' factual and employment settings, there also exist a number of individualized defenses that Defendants would be unable to effectively raise in a collective action. Specifically, Defendants urge that there are two main categories of defenses that may only be addressed individually: (1) contradictions found in Plaintiffs' declarations; and (2) credibility issues that would require impeaching individual Plaintiffs. (Defs.' Br., pp. 20-24.)

Regarding declaration contradictions, Defendants point to seventeen branch managers and regional managers named in Plaintiffs' declarations and depositions who have allegedly withheld overtime payments, all of whom insist that all overtime was accurately paid. (See Manager Decls., Doc. No. 152-14.)[7] In order to resolve the question of liability, a fact-finder would need to determine whether the employee or the manager was being truthful. However, Defendants correctly note that resolving this question with regard to one manager and one employee would not accomplish the task for any of the others.

---

[7] For example, opt-in Plaintiff, Jill Medina, filed a declaration stating that under Branch Manager Rigela Bejgo she was pressured into not reporting overtime, was offered "comp time" in future weeks instead of paying overtime and was instructed to work through lunch breaks. (Medina Decl., Doc. No. 152-12, ¶¶ 5-18.) Bejgo filed her own declaration stating that the allegations are completely false, that she instructed Medina to report all time worked and that Medina rarely worked over thirty-two hours per week. (Bejgo Decl., Doc. No. 152-14, ¶¶ 3-15.)

11

Defendants also point to a number of Plaintiffs who made contradictory statements in their declarations and depositions, and those who have other, more substantial credibility issues.[8] These issues would likely be useful tools on cross examination with regard to a specific Plaintiff. However, even if a successful cross examination left a trier of fact questioning one Plaintiff's veracity, the same juror would have little sense as to whether the hundreds of other Plaintiffs were truthful in claiming that they were denied overtime.

Plaintiffs respond that Defendants' arguments focus on merits and damages issues, which are irrelevant to a decertification analysis, citing to Nerland v. Caribou Coffee Co., Inc., 564 F. Supp. 2d 1010 (D. Minn. 2007) and Bradford v. Bed Bath & Beyond, Inc., 184 F. Supp. 2d 1342 (N.D. Ga. 2002). In these cases, where plaintiffs argued they were improperly labeled "exempt" for purposes of overtime payment, the courts found that the defenses raised "relate[d] to issues of damages; namely, how much uncompensated overtime is actually due to each individual plaintiff if the exemption is found to be improper." Nerland, 564 F. Supp. 2d at 1025; see also Bradford, 184 F. Supp. 2d at 1351 ("At worst . . . some individual damages hearings may be required.")

Here, Defendants' point regarding individualized defenses does not go to questions of merits or damages, but rather concerns the practical implications of resolving the myriad credibility disputes at play. At a trial, cross examination of each Plaintiff "would require consideration of different facts and individualized testimony that is unique to each Plaintiff and could not be generalized among the [other] Plaintiffs." Kuznyetsov v. West Penn Allegheny Health Sys., Inc., 2011 WL 6372852, at *6 (W.D. Pa., Dec. 20, 2011). For instance, questioning

---

[8] For example, Gail Ekwurtzel, an opt-in Plaintiff, who claimed she was not paid overtime during 2008, but was confronted with pay stubs in which she was paid overtime, which she then agreed were correct. (Ekwurtzel Dep., Doc. No. 152-7, pp. 39, 81.) A further example is opt-in Plaintiff, Rudy Bonilla, whose employment was terminated after giving his girlfriend a power of attorney over an elderly customer's account, and shortly thereafter a large sum of money was withdrawn from that account. (Bonilla Dep., Doc. No. 152-3, pp. 84-98.)

named Plaintiff Mary Ryan as to whether her manager, Thomas McClellan, instructed her not to record more than forty hours, which he specifically denies, would not answer any questions about the liability of Defendants from other branches. Questioning opt-in Plaintiff Francisco Lugo-Rodriguez's credibility, because he lied about being fired from a previous bank for theft in his Citizens employment application, would not help the fact-finder assess the credibility of any other Plaintiff. These individualized defenses destroy the efficiency sought to be gained through a collective action. Accordingly, we find that Plaintiffs are not similarly situated with regard to possible defenses.

## C. Fairness and Procedural Considerations

Finally, we will also grant Defendants' motion because testimony from a representative sampling of Plaintiffs would prejudice the parties.

In response to this Court's Order of June 23, 2011, Plaintiffs provided Defendants with a "Preliminary Trial Plan," which noted that testimony from Plaintiffs will be provided on a representative basis. (Trial Plan, Doc. No. 152-16, ¶ A8.) Defendants argue that this case cannot fairly be tried on a collective basis because representative testimony, whereby a small sample of Plaintiffs would testify on behalf of the whole, would not fairly demonstrate the validity or invalidity of all claims, nor would it allow Defendants "to dispute allegations made by claimants or to raise substantive defenses." (Defs.' Br., p. 24) (quoting Gates v. Rohm & Haas Co., 655 F.3d 255, 266 (3d Cir. 2011)).

Testimony of a representative sampling of Plaintiffs is a procedure often used in FLSA actions, within this Circuit and elsewhere. See e.g., Reich v. Gateway Press, Inc., 13 F.3d 685, 701 (3d Cir. 1994). However, the Court must consider whether representative testimony will adequately present the claims of all Plaintiffs. Lugo v. Farmer's Pride Inc., 737 F. Supp. 2d 291,

316 (E.D. Pa. 2010). "Drawing liability conclusions about a large group based upon a small portion of statements can be problematic, especially when testimony among the representatives themselves is disparate." Prise v. Alderwoods Group, Inc., 817 F. Supp. 2d 651, 677, n. 20 (W.D. Pa. 2011).

Given the multitude of differences in the factual and employment settings of the Plaintiffs, Plaintiffs' inability to provide evidence of an overarching illegal policy, and concerns of individualized defenses, we find that fairness and procedural considerations also require us to decertify the collective action. As in Lugo,

> If the present case were tried collectively and a verdict were reached for defendant, this result would be unfair to those plaintiffs who may have been denied pay owed . . . similarly, if a verdict were reached for plaintiffs, this would be unfair to defendant[s], who would be deemed liable as to the entire collective-action class when it may not have undercompensated all individual members of that class.

Lugo, 737 F. Supp. 2d at 303.

We are mindful of Plaintiffs' concerns about the practical ramifications of decertification, and understand that the hundreds of opt-in Plaintiffs are now free to initiate their own suits on an individual basis. See Andrako v. U.S. Steel Corp., 788 F. Supp. 2d 372, 383 (W.D. Pa. 2011). However, lower costs and pooling of resources are not the only considerations. Any efficiency gained through bringing this action collectively would be outweighed by the substantial likelihood of "mini-trials" and the risk of prejudice to both parties. Therefore, we find that fairness and procedural considerations, when considered in light of Plaintiffs' disparate factual and employment settings and individualized defenses, require that the collective action be decertified.

## IV. CONCLUSION

For the foregoing reasons, "Defendants' Motion to Decertify the Collective Action" will be granted. However, considering the broad remedial purposes of the FLSA and for the sake of efficiency, we will consider the possibility of certifying a smaller group if Plaintiffs can make a showing that they are similarly situated.

Our Order follows.